We're going to move to the last one for the morning. The Farah case, which is really two cases. Okay, Ms. Mondavon McKillop, we'll hear from you first. Good morning, your honors. May it please the court. This case is about immigration courts refusing to consider undisputed record evidence, follow clear legal standards, and thus failing to confront the very real threat al-Shabaab extremists posed to Mr. Hassan Farah's life in Somalia. There were many issues raised in this case, and I plan to focus on the Mr. Farah's challenges to the denial of three types of relief, withholding of removal, protection under the case the agency committed legal error that this court has jurisdiction to review. I'm happy to answer questions on any other issues as well. Applying the law of withholding to the undisputed record evidence, Mr. Farah proved that it is more likely than not that he would face a threat to his life for freedom on account of a protected grant. Now for withholding, you have to explain the who and the why. And Mr. Farah explained the who are al-Shabaab extremists, and the why is on account of imputed beliefs to him by al-Shabaab that they believe to be subversive to their own extremist political and religious doctrine, as well as a particular social group of westernized returnees and those associated with western governments. We're not talking about just any returnee. We're talking about those that have lived in the United States long enough to become Americanized, to be associated with America in their speech, their western beliefs, their culture, their mannerism, their dress. Mr. Farah, who was found credible by the agency, testified that two of his cousins were killed after being deported to Somalia. The agency ignored the undisputed record evidence from experts, the expert declarations that al-Shabaab considers such westernized returnees to be infidels and spies and targets them for attacks and execution. The agency instead evaluated a completely different issue, not the one raised. The immigration court reframed the claim of who and why, the who being the formal Somali government and the why being lack of clan connections. And while the agency acknowledged that the government does harass and discriminate returnees, they didn't address the actual claim raised. They didn't address the undisputed evidence that goes to the heart of the claim. And the lesson of this court's decision in Gakusakumand is that the immigration courts can't rely on a State Department report that doesn't address the specific issue, the specific question raised. Thus, the agency failed to give reason consideration in this case, which is a legal error. They ignored the evidence, another legal error. Persecution that your client's family suffered seemed to be tied to tribal membership and not being Americanized Somalis. So insofar as there was persecution, it wasn't on the ground that he was alleging. And it seems to me that the record was weak, and we would clearly, we would not be able to say that the record compels a different finding, that your client would not suffer something that would rise to the level of persecution for being a so-called Americanized Somali. Well, Your Honor is correct in that the past persecution was based on clan membership. We did not raise that issue to go to his claim of being an Americanized returnee. We raised that issue with regards to the burden of proof for internal relocation and whether internal relocation is reasonable. But regardless of whether you believed he suffered past persecution on a different basis, and whether that shifts the burden of proof on relocation, it doesn't matter because Mr. Farah did prove a countrywide threat to himself. And I would disagree with the assessment that the record evidence was weak. There were two expert- How would we say that the record compels a finding that he would be persecuted on the basis of being an Americanized Somali? It's a democratic form of government, albeit one with a lot of problems. I understand that they have a federal constitution that makes Islam the state religion, and he has more moderate religious beliefs, but he's Muslim. How do we look at this record and say that there's not substantial evidence to support the board's finding that he would not suffer persecution on that ground? Well, two things. Our claim is that the agency did not consider the record evidence that al-Shabaab poses a threat, not the formal Somali government, but al-Shabaab. Our expert declaration says al-Shabaab seeks to eradicate all things Western in Somalia. Many members of al-Shabaab believe returnees from the West to be in a state of apostasy and therefore subject to punishment. The group suspects as possible spies anyone returning from the West and executes those it finds guilty of spying. Okay, this is in the record. This was pointed out to the agency below on numerous occasions as well as the other expert declaration in the record. Here's the problem though. Isn't the government fighting al-Shabaab? The fact that the government is fighting al-Shabaab does not change the fact that al-Shabaab has actually infiltrated the government and compromised that fight. A government official told our expert witness that it's so hard to fight al-Shabaab because they are present in cabinet meetings and it's widely accepted that al-Shabaab has infiltrated nearly every institution of the Somali government. The other point I'd like to make in response to your question, your honor, is that we're not challenging this based on substantial evidence. We're challenging this based on the fact that the agency failed to give reason consideration and consider all of the evidence in the record as they are bound to do and that is a legal error. We are not challenging the factual determination. All right, let's hear from Mr. Prada. Good morning and may it please the court. Let me ask you this in the limited time you have. If we were to deny in part and dismiss in part the petition for review and dissolve the stay of removal, would that moot your appeal? In part because there are alternate claims made in this case and I think the Akinwale. I mean any further detention though would have to be in the process of removing him, right? Yes. Which would trigger a different statute. I think you're right about the 1226 versus the 1231 and that the detention now is under 1226 but if the stay of denial, it would seem to me that then removal would be, then any further detention, the government would have 90 days to start with to remove him and that's just a different, any challenge to that is just not right. I believe the court's correct. It would be 1231 detention at that point but the to give guidance to the lower courts on this because we don't give advisory opinions. No, I mean if that detention then became too long, if it seemed to me you could perhaps later file a habeas petition but if the stay of removal is dissolved and then he's being processed, it's premature to challenge that it seems to me. Yes and there's a premise to that that's important. Yes. The functioning between the 1226 and 1231 to reach the conclusion that a denial or dismissal of the PFR would make the case moot, the court needs to explain that interaction because under the government's theory he's been under 1231 the whole time. Yeah. Right so and if they're wrong about that and you're right then it would seem to me that the dissolution of the stay and the denial of what you call the PFR, the petition for review, would mean that the detention now is under 1231 and any habeas petition about that is not right yet. Yes, that is correct. Under our theory the removal period would begin. It would be the first stay of the removal period but that's still a premise that needs to be resolved to reach the conclusion of mootness. So if the court were to reach that conclusion I think it's necessary to explain why. But assuming the opposite case that the court were to grant the petition for review, going to the merits, I think there's also the mootness claim that was raised because of the release of the client which has been briefed in the motions. I just want to point out that it's clear that the government intent to re-detain is on the face of its own papers. The only reason, the sole reason, for his release was the Freyhaught injunction out of California where a client's not even a party to and it's on appeal he can't defend that. And the ruling that we're asking the court to make is that a person who's been held under detention for years on end cannot continue to be held as such without the procedural protections that we're requesting. So this could be if the government were to re-detain, let's say the Freyhaught injunction is dissolved, the issue still exists. And I don't think it would be fair to say well those three years are erased from the count solely because the person was temporarily released when it's clear on the papers that he was released temporarily and solely because of the Freyhaught injunction. And I think the 10th Circuit's case is very instructive on that, that a release pursuant to an injunction does not moot out a habeas petition. So turning to the merits of the due process claim, I would like to point out that the Moore case, the way I understand it, is a strict scrutiny case. Throughout the decision the Supreme Court was speaking of the narrowness of the scope of detention. We know that those facts are not the same anymore today and that the court should engage in a Matthews v. Eldridge balancing test. The 3rd Circuit case, which we noted in the reply brief, Herman Santos is exactly on point and that is the holding that asking the court to reach in terms of the fact that there is a due process problem. We're also asking the court to hold that categorically three years is too much, which I know was a dispute in the Sopo case between the majority and the concurrence, whether there should be a multi-factor balancing test or if a bright line rule could apply. We're not here to request a six-month rule. This is not the case for that. We're saying that three years is too much, but if the court were to disagree and that a balancing should be applied, then that would be most appropriate for the district court to do in the first instance. So we did request remand if the court were to find that a multi-factor balancing is required. Whoa, whoa, whoa. Judge Self is off the screen. I'm sorry. I don't know if he's dropped off. I did drop off, but I'm back. Sorry. Okay. I hope that wasn't long. I just noticed. So to continue on those points, unless the court has further questions, we'd rest on the briefs. Okay. Let's hear from Ms. Gordon. May it please the court. I'm Virginia Gordon for the respondent. Your honors, our position is that Mr. Farr is removable because of his criminal convictions and as a result, and because of the discretionary nature of the refugee inadmissibility waiver, the court lacks jurisdiction over both the denial of that waiver and the denial of his application for withholding of removal. And insofar as the court has jurisdiction over the denial of the cap protection application, as Judge Pryor recognized, the substantial evidence standard would apply. And the record does not compel the conclusion that Mr. Farr would more likely than not suffer torture. And with regard to the habeas petition, we do believe that is moot because he's been released. But also if the court does deny and dismiss the petition for review, then there is no question about what his detention authority is. As you've discussed, it would be under 1231 and we'd have a different situation. If the court, in answer to the question about remand, if the court were to remand the petition for review, then the court could also remand the petition to the district court because at that point, there's no question that he would be under mandatory detention and the district court could address those due process questions under that authority since the district court considered it under 1231. So the government asks that the court both dismiss and deny the petition for review and also dismiss the habeas petition. I guess something I was missing is I understand the argument about us lacking jurisdiction to review the denial of the refugee and admissibility waiver. Your condition is that we also lack jurisdiction over the application for withholding of removal and for cat relief. Is that right? Not for cat relief, because under the Nassarallah decision in the Supreme Court, it has stated that the court maintains jurisdiction over cat protection applications just under the substantial evidence standard. And in response to some of the questions about withholding, we would disagree that the court did not give consideration the expert opinions. I'm sorry, the court has never required an immigration judge or the board to cite every single piece of evidence. And in terms of how it would review the substantial evidence for the cat claim, a search of the record searching westernized, Americanized, returnees, and extremism actually does show differences. There are points that Ms. Montalban-McKillop makes that are in the record, but there are also parts of the record that show that countries reopened returning Somalis to Somalia because the situation for westernized citizens had improved, such as Sweden. In the Danish report, it talks about Sweden reopening. There are also contradicting information about whether al-Shabaab actually did infiltrate the government. So there are expert opinions suggesting that, but there are also articles, a New York Times article that says there was a possible infiltration or people assumed there was infiltration because of the way acts were carried out. There's also the event that there's evidence going both ways, right, and we have to deny the petition. Right, because if it doesn't compel the conclusion that he would more likely than not suffer torture, then the petition would be denied. And that's the only claim that the court can review given the criminal convictions. And because it, the agency did consider the record, it pointed out evidence that it saw as showing that he did not meet his burden to show him more likely than not, that he would more likely than not suffer persecution on account of any of those protected grounds. And so if the court does not have any further questions, then we will also rest on our briefs. I have a question about the jurisdictional issue you raised with respect to withholding of removal. I'm not sure you quite answered Chief Judge Pryor's question about why we wouldn't have jurisdiction over that claim. The, of the withholding of removal? Yes. The jurisdictional bar under 8 U.S.C. section 1252 D is what bars jurisdiction over that claim that he, Mr. Farah has been convicted of both an aggravated felony and a controlled substance crime. And those convictions- There's an exception for questions of law though? There is an exception for questions of law. And there's an argument about failure to give reason consideration. Isn't that a question about, a question of law? Yes, Your Honor, it is a question of law. We just disagree that it's actually a colorful question in this case because the agency, it would have, they did, the immigration judge pointed out parts of the record that it considered in making its analysis. And although it didn't discuss every single piece of evidence, it did point out information in the record that would show that it's not more likely than not for Mr. Farah to be harmed. And it's not unreasonable for the immigration judge to do that. And it does, there's, there's nothing in the record that shows that the I.J. didn't consider it. He claimed that he said that they consider it. That inquiry would be different from the convention against torture issue where we actually would review the substantial evidence question. And so long as there was just reason consideration on the withholding of removal for a well-founded fear of future persecution, we don't review that for substantial evidence. Just, we just make, we satisfy ourselves that there was reason consideration. Yes, Your Honor, that's what I would say. If you look at the record and say the judge made a reason consideration on this case, he did not commit a legal error, then there's no further review of the withholding decision. But there is a review of the record to determine whether it compels a different, whether Mr. Farah has shown that the record compels a conclusion that he would more likely than not suffer torture. The court would review that despite the criminal convictions. I get it. Oh, thank you. And I hope that clarified the question. And as we say, just, oh yes. Is Judge Jill Pryor satisfied? Yes, thank you. Okay, thank you. And just as a final note, again, we would ask for the, to dismiss and deny the petition for review, and then determine the habeas position along with that as it, the determination on the habeas will be tied to the petition for review. And thank you. You would agree with what we were talking about during Mr. Prada's argument, which is that in the event we were to deny and pardon, to dismiss and pardon, and to dissolve the stay, that would necessarily make the habeas petition. Yes, we agree with that, Your Honor, because it would necessarily make his, any detention at that point under 1231 as having a final removal. And it would not be in the event that he continued to be prolonged, there was a prolonged detain, following that, it might be that he could file another habeas petition. But, but that's a different question for a different day. Yes, that is correct, Your Honor. Thank you. Thank you for your time. Thank you. Ms. Montavon-McKellar. You've got, you're on mute, but you've got, and you've got two minutes for rebuttal. Thank you. Just very quickly, two points. The Nasrallah case actually does support a conclusion that this court has jurisdiction to review factual findings as to the withholding of removal order. The theory behind Nasrallah is that a cat order does not affect the final order of removal. It's entered separately. The same is true of withholding of removal order. It does not affect a final removal order. I think the government agreed that we can review for the Convention Against Torture. Their point was that insofar as it was about a well-founded fear of future persecution, we only would review the question of law, which is a failure to give reason consideration, which I understood that is your argument about that. That is my argument. I just wanted to make the point that Nasrallah does support the position that the court has jurisdiction to review factual findings for withholding of removal for the same reason that they found that the court has jurisdiction over cat orders. I would also just note that a court cannot ignore an entire set of evidence that goes to the heart of the claim. There's nothing in the record. I would disagree with the government's characterization of the record. There's nothing in the record to dispute the claim that al-Shabaab attacks westernized returnees, those associated with western governments. Should this court consider it as a factual claim, it does compel the conclusion that he was entitled to withholding and cat protection. Thank you. I think we understand your argument, Mr. Prada. Do you have anything further to say? Yes. With regard to the potential mootness of the petition for review as denied, I just want to reiterate that it's important to address the premise of when the 1231 detention actually began because in the lower courts, the government's position was that it began back in 2019. I get it. Good point. Thank you. Thank you, Mr. Prada. Okay. That's all of our business this morning. Our court will be in recess until tomorrow. Thank you.